IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANITA LYNN MANSON, | § | |
| DIANA JEAN MARTIN, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:10-cv-03663 |
| | § | |
| WALGREEN CO., | § | |
| | § | |
| Defendant | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF AUTHORITIES IN SUPPORT

A. Martin Wickliff, Jr.
State Bar No. 21419900
Federal Bar No. 3466
Jennifer J. Cooper
State Bar No. 24013541
Federal Bar No. 578926
COZEN O'CONNOR, P.C.
One Houston Center
1221 McKinney Street, Suite 2900
Houston, Texas 77010
Telephone: (832) 214-3900
Facsimile:  (832) 214-3905

**ATTORNEYS FOR DEFENDANT
WALGREEN CO**.

**OF COUNSEL**
Keenya R. Harrold
State Bar 24039664
Federal Bar No. 897938
Cozen O'Connor, P.C.
One Houston Center
1221 McKinney Street, Suite 2900
Houston, Texas 77010
Telephone  (832) 214-3900
Facsimile   (832) 214-3905

# TABLE OF CONTENTS

I.   APPENDIX ........................................................................................................ 1

II.  SUMMARY OF THE ARGUMENT ................................................................. 2

III. RELEVANT FACTUAL BACKGROUND ........................................................ 2

    A.   Procedural Background ................................................................................ 2

    B.   Walgreen's Policies And Procedures.......................................................... 3

        1.   Educational Requirements and Duties of Staff Pharmacists...................... 4

        2.   Pay Practices.............................................................................................. 4

        3.   Leaves Available to Pharmacists................................................................ 4

            (a)   Vacation ........................................................................................ 5

            (b)   Sick Days ...................................................................................... 5

            (c)   Disability Leave ............................................................................ 5

        4.   Recordkeeping............................................................................................ 6

    C.   Plaintiffs' Employment with Walgreens ..................................................... 6

        1.   Plaintiffs Were Employed As Licensed Pharmacists................................. 6

        2.   Plaintiffs Were Paid On a Salary Basis and Deductions Were Made Under Limited Circumstances................................................................... 7

            (a)   Manson .......................................................................................... 8

            (b)   Martin ......................................................................................... 11

            (c)   Venters ........................................................................................ 12

            (d)   Bates-Babineaux ........................................................................ 12

IV.  **RELEVANT LEGAL AUTHORITY**…............................................................ .13

    A.  Summary Judgment Standard............................................................ 13

    B. FLSA Overtime Requirements…………………………………...................… ..13

    C. Duties Test ………………………………….......................................... ..14

    D. Salary Basis Test…………………………………........................................ ..15

V.  **ARGUMENT AND AUTHORITIES**.................................................... 16

    A.  Walgreens Did Not Violate the Fair Labor Standards Act: Plaintiffs Were Properly Classified As Exempt Professionals .................................................. 16

       1. Plaintiffs Met The Duties Test ...................................................... 18

       2. Plaintiffs Were Paid On A Salary Basis ....................................... 19

       3. Plaintiffs Were Exempt From The Overtime Provisions of the FLSA……..21

VII. **STATEMENT OF PRECISE RELIEF SOUGHT** ............................................ 21

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)....................................................13

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ................................................13

*Anunobi v. Eckerd Corp.*,
  2003 WL 22368153 (W.D. Tex. Oxrovwe 17, 2003).......................................................19

*Auer v. Robbins*,
  519 U.S. 452 (1997)..........................................................................................................15

*Batterton v. Francis*,
  432 U.S. 416 (1977)..........................................................................................................15

*Bell v. Callaway Partners, LLC*,
  2010 U.S. Dist. LEXIS 36564 (N.D. GA—Atlanta, 2010) ..............................................20

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ................................................14

*Cleveland v. City of Elmendorf*,
  388 F.3d 522 (5th Cir. 2004)............................................................................................14

*Eillim De Jesus-Rentas et al. v. Baxter Pharm. Srvs Corp.*, *Eillim De Jesus-Rentas
  et al, v. Baxter Pharm. Servs Corp.*,
  400 F.3d 72 (1st Cir. 2005) ..............................................................................................19

*Haley v. Crittenden County*,
  2007 U.S. Dist. LEXIS 38136 (E.D. AR—Jonesboro, 2007)...........................................20

*Hogan v. Allstate Ins. Co.*,
  361 F.3d 621......................................................................................................................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ................................................13

*Parmar v. Safeway Inc.*,
  2011 U.S. Dist. LEXIS 26138 (W.D. Wash, March 14, 2011)..........................................20

*Talbert v. Am. Risk Ins. Co.*,
  2010 U.S. App. LEXIS 25889 (5th Cir. Tex. Dec. 20, 2010)..........................................21

*Webster v. Pub. Sch. Employees of Was., Inc.*,
  247 F.3d 910 (9th Cir. 2001)..........................................14

STATUTES

29 U.S.C. § 207(a)(1)..........................................14

OTHER AUTHORITIES

29 C.F.R. §541.301 (a)-(c) ..........................................15

29 C.F.R. § 541.600(b) ..........................................19

29 C.F.R. § 541.602 ..........................................14

29 C.F.R. § 541.602(a) ..........................................16

29 C.F.R. § 541.602(b)(1). Second ..........................................16

29 C.F.R. § 541.602(b)(2) ..........................................16

29 C.F.R. § 541.604(b) ..........................................16

29 C.F.R. § 790.17(d) ..........................................16

Fed. R. Civ. P. 56(c)..........................................13

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANITA LYNN MANSON, | § | |
| DIANA JEAN MARTIN, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:10-cv-03663 |
| | § | |
| WALGREEN CO., | § | |
| | § | |
| Defendant | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF AUTHORITIES IN SUPPORT

Defendant Walgreen Co. (hereinafter referred to as "Walgreens" or "Defendant") files its Motion for Summary Judgment and Memorandum of Authorities in Support ("Motion"), and moves for dismissal of all claims asserted by named Plaintiffs Anita Lynn Manson and Dianna Jean Martin, and opt-in Plaintiffs Demitrice Venters and Anderia Bates-Babineaux (collectively referred to herein as "Plaintiffs").

## I.   APPENDIX

Defendant's Appendix is attached and contains documents cited and referenced as Summary Judgment Evidence.  Exhibit 1 contains the business record affidavit of David C. Thompson, Legal Assistant in Employee Relations for Walgreens and custodian of records, attesting that the documents attached hereto and cited herein are business records of Walgreens and kept in Walgreens' ordinary course of business.

## II.    SUMMARY OF THE ARGUMENT

Plaintiffs seek payment of overtime from Walgreens for weeks in which they worked over forty hours.  However, Plaintiffs are not entitled to payment of overtime because they are exempt from the overtime requirement.  Plaintiffs are properly classified exempt professionals. As such, Plaintiffs were paid a predetermined minimum salary and performed the duties of a licensed Pharmacist.  Any deductions to their salary were of the sort expressly authorized by the regulations promulgated by the Department of Labor.  Walgreens was not legally required, by any statute or regulation, to pay Plaintiffs overtime for hours worked over forty in a week.  Plaintiffs' claims should be dismissed with prejudice.

## III.    RELEVANT FACTUAL BACKGROUND

### A.    Procedural Background

Plaintiffs filed their Original Collective Action Complaint ("Plaintiffs' Complaint") October 5, 2010, asserting violations of the Fair Labor Standards Act ("FLSA"), on behalf of themselves and "all others similarly situated."  (Docket No. 1).  Plaintiffs identified "all current and former hourly employees" as an appropriate class, but failed to assert any specifics regarding their particular employment as pharmacists or the circumstances by which Walgreens destroyed their professional exemption from overtime under the Fair Labor Standards Act.  *Id.*  On November 29, 2010, Walgreens filed a Motion for More Definite Statement, which was denied by the Court January 10, 2011.  (Docket Nos. 6 and 11).  On January 20, 2011, Walgreens timely filed its Answer. (Docket No. 12).

Following a scheduling conference, and pursuant to the request of the Court, counsel for Walgreens forwarded Plaintiffs' counsel the relevant regulatory and statutory provisions governing the professional exemption, including the salary basis test and permissible deductions.  (Exhibit A).[1]

On March 8, 2011, opt-in Plaintiff Demitrice Venters filed her consent to join this action. (Docket No. 21).   On March 25, 2011, Plaintiffs filed their motion to certify, (Docket No. 22) to which Walgreens filed a timely response April 22, 2011.  (Docket No. 27).  Plaintiffs filed a Reply on May 3, 2011.  (Docket No. 29).  At a hearing held June 3, 2011, the parties presented their oral argument; and on June 6, 2011, the Court denied Plaintiff's Motion for Conditional Certification.  The final opt-in Plaintiff, Anderia Bates-Babineaux, filed her consent to join this action July 8, 2011. (Docket No. 35).   The parties conducted discovery, which was concluded prior to the November 11, 2011 discovery deadline.

### B.    Walgreens' Policies and Procedures Governing Staff Pharmacists

Walgreens maintains several policies and procedures governing its Staff Pharmacists, including educational requirements and job objectives and responsibilities necessary to ensure high quality customer care and compliance with federal and state regulations.  In addition, Walgreens' policies and procedures govern the pay practices, availability of leave, and recordkeeping of its Staff Pharmacist.

---

[1] Correspondence to Plaintiff's Counsel dated January 31, 2011, attaching Houston Law Review Article and Statute.

### 1.    Educational Requirements and Duties of Staff Pharmacists

The educational requirements for a Staff Pharmacist include a Bachelor of Science degree and Professional Doctorate degree in Pharmacy from an accredited educational institution; current Pharmacist License in the state in which the pharmacists works or willingness to obtain same; and Certified Immunizer status or willingness to become so certified.  (Exhibit B at p. 2).[2]

Staff Pharmacists supervise Technicians, Senior Technicians, Pharmacy Cashiers, and Pharmacy Interns. (Exhibit B at p. 1).  The job objectives and responsibilities of Staff Pharmacists include ensuring the accurate filling of prescriptions, providing high quality patient care, ensuring compliance with federal and state regulations, counseling patients and resolving complaints, maintaining knowledge and skill in the field of pharmacy, and providing preventative health care services.  *Id.*

### 2.    Pay Practices

Walgreens' salaried, exempt Pharmacists are generally scheduled to work 80-84 hours per two (2) week pay period at a predetermined salary.  (Exhibit C)[3]. To the extent and degree lawful deductions are appropriate for vacation and sick leave, Walgreens may reduce this predetermined salary by the amount of such deductions.  *Id.* at ¶ 4.

### 3.    Leaves Available to Pharmacists

Walgreens provides its Pharmacists with a specific number of paid days off per calendar year for vacation and sick leave, depending on the length of the Pharmacist's

---

[2] Staff Pharmacist Job Description and Qualification Requirements.

[3] Affidavit of Mary Meehan.

tenure with the company.  *Id.* at ¶ 5. Once a Pharmacist has exhausted vacation leave and/or sick days allotted for that calendar year, that person's salary may be deducted for full-day absences taken for vacation or sick leave.  (Exhibit C at ¶ 9).

### (a)    Vacation

Walgreens' Pharmacists are entitled to two (2) weeks paid vacation per calendar year.  (Exhibit C at ¶ 6; Exhibit D at p. 4). [4]  After an employee has been continuously employed by Walgreens for five (5) years or more, that employee is entitled to 3 weeks of paid vacation; 4 weeks for fifteen (15) years of continuous service; and 5 weeks for twenty-five (25) years of continuous service.  (Exhibit D at p. 1). Vacation eligibility is based on the calendar year, and must be used within that year or it is lost.  *Id.* at p. 2.  In other words, vacation days do not "roll over" to the next calendar year.

### (b)    Sick Days

Walgreens' Pharmacists are also entitled to six (6) sick days per calendar year. (Exhibit E at p. 1).[5]  "Sick days" allow an employee to be absent from work, without losing pay, due to the employee's own personal illness or injury.  *Id*.

### (c)    Disability Leave

An eligible employee who is absent from work due to personal illness, injury, or pregnancy may also be eligible for payment under Walgreens' Disability Benefit Plan, depending on the circumstances.  (Exhibit F). [6]  An employee must be continuously

---

[4] Walgreens' Vacation Policy.

[5] Walgreens' Sick Days Policy.

[6] Walgreens' Disability Plan, revised November 18, 2002.

absent for seven (7) calendar days before disability payments commence. (Exhibit F). A maximum of five (5) sick days can be paid during the seven (7) day "waiting period" if the employee has sick day leave remaining for those days. *Id.*

### 4. Recordkeeping

Walgreens maintains records reflecting the work schedule of its salaried Pharmacists in its Salaried Exception Log System ("SELS") (Exhibit G; Exhibit H). [7] The SELS reflects any variations to an employees normal work schedule, including whether an employee takes sick and/or vacation leave. (Exhibit G). Walgreens' Pharmacists are responsible for electronically reviewing and confirming, via signature, the accuracy of information contained in SELS to ensure accurate payroll charges. *Id.* Subsequently, Pharmacy Managers and Store Managers audit, approve, and sign the SELS; and Pharmacy Supervisors conduct a final audit of SELS and sign off on payroll. *Id.*

### C. Plaintiffs' Employment with Walgreens

### 1. Plaintiffs Were Employed As Licensed Pharmacists.

Plaintiffs were employed by Walgreens as Staff Pharmacists and/or Pharmacy Managers during the periods relevant to the instant proceeding. Plaintiffs have not, to date, alleged or claimed in any pleading or in written discovery that they were not employed by Walgreens as Licensed Pharmacist or that their primary duty was not the performance of work requiring the advanced knowledge of Pharmacists, nor does any

---

[7] Salaried Pharmacist Payroll Overview; Store Manager Pharmacy Projects.

evidence support such a suggestion.  As Pharmacists, Plaintiffs were responsible for a litany of objectives and tasks, including but not limited to, reviewing, verifying and filling prescriptions; contacting medical providers and insurance companies regarding patient requirements; counseling patients and answering their questions and needs; and maintaining knowledge and skill levels in the fields of pharmacy and healthcare.  (Exhibit B, pp. 1-2).

Plaintiff Anita Manson worked as a Pharmacy Manager during a portion of the relevant time period.  (Exhibit C at ¶ 10; Ex. I).[8]  The objectives and tasks of the Pharmacy Manager included managing all aspects of the pharmacy department; ensuring compliance with federal and state regulations; selecting, training, evaluating, developing, scheduling, coordinating, and supervising pharmacy department personnel; and addressing inventory costs and pharmacy sales issues, in addition to the objectives for Staff Pharmacists.  (Exhibit J).[9]

### 2. Plaintiffs Were Paid On A Salary Basis and Deductions Were Made Under Limited Circumstances.

Plaintiffs were all paid predetermined salaries every two weeks, based on years of service and level of responsibility; they were also eligible for annual raises April of each year.  Pursuant to Walgreens' policies and practices, and in compliance with applicable Department of Labor Regulations, salaried employees may experience salary deductions under limited circumstances, including full-day absences taken for vacation and/or sick

---

[8] Performance Review of Manson, Manager of Pharmacy Department.

[9] Job Description, Pharmacy Manager.

leave once the employee exhausted all of her paid vacation and/or sick leave for such absences in that calendar year.   (Exhibit C at ¶ 9).

### (a)   Manson

Manson was eligible for 20 days paid "vacation" leave and 6 days paid "sick" leave.   (Exhibit C-E; Exhibit K, Manson Demonstrative Chart 2007).[10]   These leaves were awarded at the beginning of the calendar year.   (Exhibit C at ¶ 5).   Once these leaves were exhausted with qualifying absences, Walgreens exercised the right to reduce Manson's salary for full-day absences.   *Id*.   These were the only instances in which Manson's salary was reduced below the predetermined amount.  (Exhibit K).

In 2007, Manson exhausted her vacation leave in the pay period ending July 20, 2007.  *Id.*  The following paychecks were reduced for full-day absences taken by Manson for personal reasons on or after this pay period, pursuant to Walgreens' leave policies and procedures:

| Payroll Period | Full-Day Absence Deductions During Period for Vacation Days |
|---|---|
| July 20, 2007 | 3 Days |
| August 31, 2007 | 1 Day |
| September 14, 2007 | 1 Day |
| September 28, 2007 | 2 Days |
| November 9, 2007 | 1 Day |
| December 21, 2007 | 1 Day |

(Exhibit K).

---

[10] Demonstrative Exhibits included as evidence reflect the pay and leave information, as well as information that can be derived therefrom, for the identified plaintiff and time period.  Attached to each demonstrative exhibit are the documents from which the information is derived

Manson also exhausted her sick leave in 2007; however, no paychecks were deducted for full-day absences taken by Manson for sick leave.  (Exhibit K).

In 2008, Manson exhausted her vacation leave for the pay period ending August 1, 2008. (Exhibit L, Manson Demonstrative Chart 2008).  The following paychecks were reduced for full-day absences taken by Manson for personal reasons after this pay period, in accordance with Walgreens' leave policies and procedures:

| Payroll Period | Full Day Absence Deductions During Period for Vacation Days |
|---|---|
| August 1, 2008[11] | 5 Days |
| August 29, 2008 | 2 Days |
| November 21, 2008 | 5 Days |
| December 5, 2008 | 1 Day |
| December 19, 2008 | 4 Days |

(Exhibit L).

Manson did not exhaust all of her 2008 sick days, thus, she did not have any deductions from her paychecks for sick leave in 2008.  (Exhibit L).

In 2009, Manson exhausted her vacation leave for the pay period ending July 31, 2009. (Exhibit M, Manson Demonstrative Chart 2009).  The following paychecks were reduced for full-day absences taken by Manson for personal reasons after this pay period, in accordance with Walgreens' policies and procedures:

---

[11] Plaintiff exhausted her vacation leave bank over the course of this payroll period.  Her pay was reduced for full day absences taken after after the leave bank was exhausted.

| Payroll Period | Full Day Absence Deductions During Period for Vacation Days |
|---|---|
| July 31, 2009 | 3 Days |
| August 14, 2009 | 1 Day |
| August 28, 2009 | 1 Day |
| September 11, 2009 | 5 Days |
| November 6, 2009 | 1 Day |
| December 18, 2009 | 1 Day |

(Exhibit M).

Manson also exhausted her sick leave for the pay period ending September 25, 2009.  (Exhibit M).  No paychecks were reduced for the additional full-day absences taken by Manson for sick leave.

In 2010, Manson exhausted her vacation leave for the pay period ending May 7, 2010.  (Exhibit N, Manson Demonstrative Chart 2010).  The following paychecks were reduced for full-day absences taken by Manson for personal reasons after this pay period, in accordance with Walgreens' policies and procedures:

| Payroll Period | Full Day Absence Deductions During Period for Vacation Days |
|---|---|
| May 21, 2010 | 2 Days |
| June 2, 2010 | 1 Day |
| June 18, 2010 | 2 Days |
| July 30, 2010 | 5 Days |
| August 13, 2010 | 1 Day |
| August 27, 2010 | 2 Days |
| October 8, 2010 | 1 Day |
| November 5, 2010 | 1 Day |
| November 19, 2010 | 3 Days |
| December 3, 2010 | 1 Day |
| December 17, 2010 | 2 Days |

(Exhibit N).

In 2010, Manson exhausted her sick leave for the pay period ending December 3, 2010.  Ex. N. No paycheck was deducted for sick leave 2010. *Id.*

### (b)   Martin

Martin was eligible for 15 days paid "vacation" leave and 6 days paid "sick" leave. (Exhibit C-E; Exhibit O, Martin Demonstrative Exhibit 2007).  These leaves were awarded at the beginning of the calendar year.  (Exhibit C at ¶ 5).  Once these leaves were exhausted with qualifying absences, Walgreens had the right to reduce Martin's salary for full day absences.  *Id.*

In 2007, Martin was on disability leave from May 16, 2007 to July 18, 2007. (Exhibit O). Prior to taking disability leave, Martin exhausted her sick leave for the pay period ending May 11, 2007.  *Id.*  Martin was not paid for full day absences occasioned by the illness or injury supporting her disability benefits which preceded the leave. (Exhibit F; Exhibit O).  In 2008, Martin did not exhaust her vacation or sick leave; thus, no paychecks were reduced.  *Id.*; (Exhibit P, Martin Demonstrative Chart 2008).  In 2009, Martin was on disability leave in July.  (*Id.*; Ex. Q, Martin Demonstrative Chart 2009). Martin did not exhaust her sick days nor vacation days prior to taking disability leave.  *Id.* Therefore, pursuant to Walgreens' Disability Benefit Plan, five (5) days of the seven (7) day "waiting period" were paid.  (Exhibit F.; Exhibit Q).

In 2010, Martin took disability leave. (Exhibit R). Martin was on disability from May 1, 2010 to July 3, 2010. *Id*. Martin was not paid for full day absences occasioned by the illness or injury supporting her disability benefits which preceded the leave. (Exhibit F; Exhibit R).

### (c)  Venters

Venters was eligible for 20 days paid "vacation" leave and 6 days paid "sick" leave. These leaves were awarded at the beginning of the calendar year. (Exhibit C at ¶ 5). No paycheck was reduced for full day absences taken by Venters for vacation or sick leave taken from 2007 to 2010. (Exhibits S-V, Venters Demonstrative Charts 2007(S), 2008(T), 2009 (U), and 2010 (V)).

### (d)  Bates-Babineaux

Bates-Babineaux was eligible for 15 days paid "vacation" leave and 6 days paid "sick" leave. (Exhibit C). Once these leaves were exhausted with qualifying absences, Walgreens could exercise the right to reduce Bates-Babineaux's salary for full-day absences. *Id*. In 2007, no paycheck was reduced for full day absences taken by Bates-Babineaux for vacation or sick leave taken during this time period. (Exhibit W, Bates-Babineaux Demonstrative Chart 2007).

In 2008, Bates-Babineaux was on disability in July and August. (Exhibit X, Bates-Babineaux Demonstrative Chart 2008). Bates-Babineaux did not exhaust her sick days or vacation days prior to taking her disability leave in July; therefore, pursuant to Walgreens' Disability Benefit Plan, five (5) days of the seven (7) day "waiting period" were paid. *Id*. Bates-Babineaux exhausted her sick leave in the pay period ending

August 1, 2008.  *Id.*, Bates-Babineaux was not paid for full-day absences occasioned by the illness or injury supporting her disability benefits which preceded the leave.  (Exhibit F; Exhibit X).  Thus, she was not paid July 19, 2008-July 22, 2008.

In 2009, Bates-Babineaux exhausted her vacation leave during the pay period ending August 22, 2009.   (Exhibit Y, Bates-Babineaux Demonstrative Chart 2009).  Bates-Babineaux's paycheck for the pay period ending December 18, 2009 was reduced for two full-day absences taken by Bates-Babineaux for personal reasons.  *Id.*

In 2010, no paycheck was reduced for vacation or sick leave taken during this period.  (Exhibit Z, Bates-Babineaux Demonstrative Chart 2010).

## IV.    RELEVANT LEGAL AUTHORITY

### A.    Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there are no genuine issues of material fact for trial and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are those "that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  Underlying facts are viewed most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Once the

moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

### B.    FLSA Overtime Requirements

The FLSA requires covered employers to pay nonexempt employees one and one-half times their regular rates of pay for all hours worked in excess of forty (40) hours per workweek.  29 U.S.C. § 207(a)(1); *Cleveland v. City of Elmendorf*, 388 F.3d 522, 526 (5th Cir. 2004).  The Secretary of Labor has issued regulations providing that employees are exempt from the overtime requirement if (1) they are paid a "predetermined" weekly salary of at least $455 and (2) perform the types of job duties set forth in the regulations for the exemptions.  *See* 29 C.F.R. § 541.602 (salary basis) and §§ 541.100 through 541.300 (executive, administrative, and professional exemptions).  These two requirements are commonly referred to as the "salary basis" test and the "duties" test. *Hogan v. Allstate Ins. Co.*,  361 F.3d 621. 625 (11th Cir. 2004).  With these types of claims, the court should initially determine whether the employee satisfies the duty requirements of an exempt employee, and then examines if the employee was paid a salary according to the "salary basis test.  *Webster v. Pub. Sch. Employees of Was., Inc.*, 247 F.3d 910 (9th Cir. 2001).

### C.    Duties Test

In this case, Plaintiffs have not challenged their professional status based on the "duties test."  It is clear that the duty of a licensed Pharmacist is one requiring knowledge

of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.  29 C.F.R. §541.301 (a)-(c).[12]

### D.    Salary Basis Test

The court must then examine if the employee meets the "salary basis test." Plaintiffs allege they were not paid on a salary basis.  In fact, the only actual policy or practice Plaintiffs identify as unlawful is the allegation that Walgreens failed to pay Plaintiffs on a salary basis because of alleged improper deductions.

The text of the FLSA does not reference the salary basis test; instead, this test was created by the Secretary of Labor.  The Supreme Court has acknowledge the Secretary of Labor's interpretations of the salary basis test to be controlling "unless 'plainly erroneous or inconsistent with the regulation.'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997).  *See also Batterton v. Francis*, 432 U.S. 416, 425 n. 9 (1977).[13]  The regulations governing the salary basis test establish that an employee is considered to be paid "on a salary basis" within the meaning of the regulations "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.[14] Exceptions to this rule permit an employer to

---

[12] "Knowledge of an advanced type" means knowledge which cannot be attained at the high school level, knowledge in a field of science or learning, and knowledge customarily acquired by a prolonged course of specialized intellectual instruction and study.

[13] ("The FLSA is greatly supplemented by regulations promulgated by the Administrator of the U.S. Department of Labor, Wage and Hour Division.  These regulations are given the force and effect of the law.")

[14] An exempt professional's compensation may be computed on an hourly basis without violating the salary basis requirement as long as she is guaranteed the minimum required amount during each pay period and the guaranteed

alter the payments based upon certain events, such that salary deductions under particular circumstances do not disturb the conclusion that an employee is paid on a salary basis.

An employer may make deductions to a salaried employee's wages without converting him/her to an hourly employee for two (2) reasons. First, "If an employee is absent for a day or longer [for personal reasons other than sickness or accident] his salaried status will not be affected if deductions are made from his salary for such absences." 29 C.F.R. § 541.602(b)(1). Second, an employer may also make full-day deductions from an employee's pay for absences due to sickness or disability, if such deductions are made "in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness and disability." 29 C.F.R. § 541.602(b)(2). If such bona fide plan exists, an employer can make deductions from an employee's salary for full-day absences due to sickness or disability before the employee has qualified under the plan and after the employee has exhausted the leave allowance under the plan. *Id.*[15]

## V.   ARGUMENT AND AUTHORITIES

### A.   Walgreens Did Not Violate the Fair Labor Standards Act. Plaintiffs Were Properly Classified As Exempt Professionals.

Plaintiffs allege Walgreens failed to pay them overtime in violation of the Fair Labor Standards Act. However, Plaintiffs ignore the clear legal authority creating an

---

amount bears a reasonable relationship to the amount actually earned. 29 C.F.R. § 541.604(b); 29 C.F.R. § 541.602(a).

[15] Wage and Hour Opinion Letter, 2005 WL 330606 (dated January 7, 2005) (explaining the requirement of the FLSA, its regulations, and how they apply to particular circumstances, and that the DOL considers these opinion letters to be "rulings," 29 C.F.R. § 790.17(d).

exemption to the overtime requirement for those employees properly classified as exempt professionals; when such an exception is demonstrated, Walgreens is under no obligation to pay overtime, as a matter of law.

Plaintiffs have had ample opportunity to articulate their claims and allegations.   In response to discovery requests seeking an explanation of their claims, as well as witnesses and evidence supporting same, Plaintiffs focus on the circumstances and instances in which they claim to have worked hours for which they did not receive payment and/or overtime.  For example, in response to Walgreens' Interrogatory No. 4 seeking the identification of "all policies, procedures or practices by which you allege Walgreens failed to pay you a predetermined amount constituting all or part of your compensation," Plaintiff Manson responded, by stating Walgreens had a practice of requiring its pharmacists to "work more hours than those for which…(they)…are scheduled…because…(they)…cannot break for lunch or leave at the end of a scheduled shift because there is always work to be done that can't be left for the next shift."  Ex. AA.  Plaintiff Mason further responded she was not paid for these unscheduled hours, and was, instead, instructed to "make up" for those hours by leaving early or coming in late another day.  *Id.*  In addition, Plaintiff Manson stated in her interrogatory responses that she was "forced to use a vacation days on each Christmas Eve if the store you are working at modifies its hours which eliminates your normal shift." *Id.*[16]

In their Motion to Certify, Plaintiffs claimed they were improperly classified as exempt employees, despite their employment as Pharmacists. *Id.*  Plaintiffs *did not* deny

---

[16] See also Exhibit BB, Plaintiff Martin's untimely responses provided similar answers to Walgreens' Interrogatory.

they performed the duties and responsibilities of licensed Pharmacists and/or Pharmacy Managers; nor did they claim they did not exercise the independent discretion associated with such roles.  *Id*.   Rather, Plaintiffs alleged they were not paid on a salary basis, pointing to a single instance in which Plaintiff Manson alleges her pay was improperly deducted "because she had an absence occasioned by Walgreens."  *Id*. at p. 5. Plaintiffs claim that an alleged closure of the pharmacy on **Christmas Eve** 2010 (which allegedly occurred nearly 3 months after this lawsuit was filed) was the date on which Manson would have been available to work, had Walgreens not modified its store hours to eliminate her shift.  *Id*. at p. 6.

Plaintiffs cannot dispute the credible evidence submitted by Walgreens demonstrating Plaintiffs were properly classified as exempt under both the duties and salary basis tests.

### 1.     Plaintiffs Met The Duties Test.

Manson, Martin, Venters, and Bates-Babineaux were all employed as Pharmacists by Walgreens during the relevant period.  Each was a licensed Pharmacists responsible for, among other things, ensuring the accurate filling of prescriptions, providing high quality patient care, ensuring compliance with federal and state regulations, counseling patients and resolving complaints, maintaining knowledge and skill in the field of pharmacy, and providing preventative health care services.  Plaintiffs clearly satisfied the duties test associated with the exempt professional classification, and they have not pled otherwise.  (Exhibit B).

Courts have found that pharmacists' degrees and work satisfy the "duties test" of the bona fide professional exemption.  *In Anunobi v. Eckerd Corp.*, the court found that the Plaintiff, a salaried Pharmacist, performed "professional" duties, as required to meet the professional exemption.  *See, e.g.*, *Anunobi v. Eckerd Corp.*, 2003 WL 22368153, *5 (W.D. Tex. Oxrovwe 17, 2003)..  Similarly, in *Eillim De Jesus-Rentas et al. v. Baxter Pharm. Srvs Corp.*, 400 F.3d 72 (1st Cir. 2005), pharmacists were found to be exempt from FLSA's overtime requirements pursuant to the professional exemption.

The U.S. Secretary of Labor lists "various types of physical, chemical, and biological sciences, including pharmacy and registered or certified medical technology" as professions which meet the requirement for a prolonged course of specialized intellectual instruction and study contemplated by the professional exemption.  *Id*.; § 541.301(e)(1) (emphasis added).

Plaintiffs have not asserted, in pleadings, discovery, or otherwise, that they were not employed or working as licensed Pharmacists during the relevant period.  Walgreens has satisfied the duties test for the purposes of the professional exemption.  Thus, Plaintiffs have been properly classified as exempt under the duties test.

## 2.     Plaintiffs Were Paid on a Salary Basis.

Walgreens also satisfies the salary basis test. Plaintiffs received a predetermined minimum for their regularly scheduled hours on a bi-weekly basis.  It is undisputed that Plaintiffs were always paid in excess of the minimum amount required under the statute, which is $910 for an employee compensated bi-weekly.  29 C.F.R. § 541.600(b). In fact, the Plaintiffs' salaries far exceeded that amount:   Manson was paid a minimum of

$3504.00 per bi-weekly pay period; Martin was paid a minimum of $3980.00; Venters was paid a minimum of $3980.00; and Bates-Babineaux was paid a minimum of $4200.00.  These amounts were not reduced if Plaintiffs were late to work or left early. (Exhibit C at ¶¶ 11-13).

Walgreens has highlighted all the instances in which the salaries of Plaintiffs were subject to deductions on pages 7-13 of this motion.   All these deductions were permissible under the FLSA without converting Plaintiffs to hourly workers, as each was proper under the Department of Labor's regulations.  More specifically, deductions were made to the salaries of the Plaintiffs as a result of (1) full-day absences for vacation leave; and (2) full-day absences due to sickness, as these deductions were made pursuant to a bona fide absence policy or practice.  (Exhibits. K-Z).

Courts have acknowledged that full-day deductions for absences occurring during regularly scheduled workdays are expressly authorized by Department of Labor Regulations, and, thus, do not impact the salary basis test.[17]   Any and all deductions to the salaries of Plaintiffs were pursuant to Department of Labor's Regulations which allow employers to deduct the salaries of exempt employees for full-day absences for vacation and/or sick leave, pursuant to a bona fide sick leave policy or practice, without the threat of jeopardizing the salary basis. Plaintiffs cannot refute the evidence supporting this conclusion, nor can they dispute the clear language of the regulations in question.

---

[17] *Bell v. Callaway Partners, LLC*, 2010 U.S. Dist. LEXIS 36564 (N.D. GA—Atlanta, 2010) (Finding employer's full-day deductions for absences missed during regularly-scheduled workdays were authorized by DOL regulations and, thus, did not violate the salary basis test); *Parmar v. Safeway Inc.*, 2011 U.S. Dist. LEXIS 26138 (W.D. Wash, March 14, 2011)(Dismissing overtime claims of employee Pharmacists when salary basis test met; all deductions were pursuant to DOL regulations for qualifying full-day absences); *Haley v. Crittenden County*, 2007 U.S. Dist. LEXIS 38136 (E.D. AR—Jonesboro, 2007)(Deductions for full-day absences did not destroy salary basis test).

Plaintiffs were paid on a salary basis, and none of the deductions destroyed this test. (Exhibits. K-Z).

### 3. Plaintiffs Were Exempt From The Overtime Provisions of the FLSA.

Plaintiffs have not claimed they did not perform the duties of a licensed pharmacist, nor can they prove such an allegation with credible evidence.  Similarly, Plaintiffs cannot refute the evidence demonstrating: (1) Plaintiffs were paid on a salary basis; (2) any deductions to their salaries were pursuant to Department of Labor Regulations; and (3) have no impact on the salary basis test.  Plaintiffs' complaints and allegations that Walgreens required them to essentially make use of "compensatory time" to make up for extra hours worked have no effect on their salary basis of payment. *Talbert v. Am. Risk Ins. Co.*, 2010 U.S. App. LEXIS 25889, 9-10 (5th Cir. Tex. Dec. 20, 2010)(Finding defendant employer's use of compensatory time did not result in any improper deductions).  Therefore, Plaintiffs were exempt from the overtime provisions of the FLSA, such that they were not owed payment of time and a half for hours worked over forty in a work week.

### VI.   STATEMENT OF PRECISE RELIEF SOUGHT

For these reasons, Walgreens requests the Court to grant its motion for summary judgment on all Plaintiffs' claims; enter final judgment that Plaintiffs take nothing by their suit; and award Walgreens costs of court and its attorney's fees, as well as any other relief to which it is entitled.

Respectfully submitted,

**COZEN O'CONNOR, P.C.**

*/s/ Jennifer J. Cooper*
A. Martin Wickliff, Jr.
State Bar No. 21419900
Federal Bar No. 3466
Jennifer J. Cooper
State Bar No. 24013541
Federal Bar No. 578926
One Houston Center
1221 McKinney Street, Suite 2900
Houston, Texas 77010
Telephone: (832) 214-3900
Facsimile:   (832) 214-3905
**ATTORNEYS FOR DEFENDANT
WALGREEN CO.**

**OF COUNSEL**
Keenya R. Harrold
State Bar 24039664
COZEN O'CONNOR
One Houston Center
1221 McKinney Street, Suite 2900
Houston, Texas 77010
Telephone: (832) 214-3900
Facsimile:   (832) 214-3905

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing *Defendant Walgreen Co.'s Motion for Summary Judgment and Memorandum in Support* has been served *ECF Court's Systems, via facsimile and hand delivery*, to counsel for plaintiff on this 30th day of December 2011:

Ms. Deshonda Charles Tackett
The Tackett Firm PLLC
2020 Southwest Freeway, Ste. 323
Houston, Texas 77098
**VIA FACSIMILE:  713-533-0303 (w/o exhibits)/**
**VIA HAND DELIVERY – (w/exhibits)**

*/s/ Jennifer J. Cooper*
Jennifer J. Cooper